**STATHATOS et al. v. ARNOLD BERN-STEIN S. S. CORP.**

**THE MARIA STATHATOS.**

No. 115, Docket 22512.

United States Court of Appeals
Second Circuit.

Argued Jan. 5, 1953.

Decided March 11, 1953.

See, also, 87 F.Supp. 1007.

Wilbur E. Dow, Jr., New York City (Dow & Symmers, Morris Douw Ferris

and Daniel L. Stonebridge, all of New York City, on the brief), for petitioners-appellants.

Phillip W. Haberman, Jr., New York City (Proskauer, Rose, Goetz & Mendelsohn, New York City, on the brief), for respondent-appellee.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This proceeding was originally commenced by a petition filed in the district court on December 14, 1949, by the present appellants herein to compel arbitration of their differences with the Arnold Bernstein Steamship Corporation under the arbitration clause of a charter party chartering their vessel, the S.S. "Maria Stathatos," to the respondent for the carriage of coal. The nature of the original dispute as to the coverage of the arbitration clause is set forth in the opinion of Judge Irving R. Kaufman ordering arbitration, reported in D.C.S.D.N.Y., 87 F.Supp. 1007. The arbitration thus ordered went forward and the arbitrators rendered an award in favor of the petitioners, confirmed in a total sum (including interest and costs) of $83,051.56 in a final decree by Judge Bondy on October 22, 1951. On or about March 6, 1952, petitioners commenced an action in the Supreme Court of New York by summons dated February 29, 1952, to collect upon the award. On March 25, 1952, respondent filed a notice of motion in the district court to vacate the final award and decree because it was discovered that the legal firm of one of the arbitrators had on occasion represented the plaintiffs. It is from Judge Noonan's order granting this motion, vacating the prior award and ordering a resubmission to arbitration, that the petitioners now appeal.

Respondent suggests doubt as to the finality of the order and its appealability, an issue we must face at once. The authorities appear to show that the order is unappealable, since it does not finally determine any claim. Both the parties and the court below have treated the proceeding as a continuous one throughout, and all the orders have been entered and docketed on that basis. This practical interpretation of the law would appear in line with the view stated by Judge L. Hand for this court in Murray Oil Products Co. v. Mitsui & Co., 2 Cir., 146 F.2d 381, 383, where he said that arbitration is "merely a form of trial, to be adopted in the action itself, in place of the trial at common law: it is like a reference to a master, or an 'advisory trial' under Federal Rules of Civil Procedure, Rule 39(c)." So he went on to hold for the court that hence an attachment at the beginning of suit in a state court removed to the federal court was not dissolved by the order to proceed to arbitration and the ultimate arbitration.

There seems no reason to question Judge Hand's conclusion, particularly in view of his careful discussion of the problem. Thus he considered whether the express provision in the Arbitration Act, 9 U.S.C. A. § 8, for retention of jurisdiction to final decree upon the award in a proceeding begun by libel in admiralty and seizure of vessel or property suggested a different rule in other proceedings, and concluded to the contrary. The procedure for a stay pending arbitration, 9 U.S.C.A. § 3, which obviously contemplates a continuing action, likewise should not be held exclusive. The steps leading to arbitration and beyond are all of similar purpose and intent; they should not be confused or embarrassed by the development of distinctions resting on no more than whether the initiative is taken by a promisor evading arbitration or a promisee seeking it. So Judge Augustus N. Hand has ruled for our court, in a proceeding started just as this by a petition to compel arbitration, that an order directing arbitration is not appealable. In re Pahlberg Petition, 2 Cir., 131 F.2d 968, and see the proceedings below, Petition of Pahlberg, D.C.S.D.N.Y., 43 F.Supp. 761 and 2 F.R.D. 533. In this Judge Hand followed Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989, which happened to be a suit initiated by the promisor. While the order now at bar is a vacation of a prior award, it is in essence one which continues the proceeding for arbitration, just as do

the orders in the cases just cited. The compulsory portions of these orders being the same, there seems no ground for distinctions here based upon the procedural mechanics which led to the orders.

The issue would therefore seem ruled by the precedents cited to deny appealability to this one step in the continuing process of arbitration here going forward. It is to be noted that a like result has been reached in New York under this same uniform Act and the requirement for a final judgment for appeal to the Court of Appeals under N.Y.C.P.A. § 588–3. Industrial Union of Marine & Shipbuilding Workers of America, Local 39, C. I. O. v. Todd Shipyards Corp., 300 N.Y. 549, 89 N.E.2d 518, dismissing an appeal from 275 App.Div. 651, 86 N.Y.S.2d 663, where the court had ordered the matter sent back to the arbitrator; and Atlantic Rayon Corp. v. Goldsmith, 302 N.Y. 842, 100 N.E.2d 40, dismissing an appeal from 277 App.Div. 554, 100 N.Y.S.2d 849, where the court had continued motions to vacate and affirm an award for consideration and report on the issues by an official referee.[1] We find no countervailing precedents; obviously such final district court actions as granting or refusing administrative subpoenas are not in point and contain no suggestion against the traditional federal rule disfavoring piecemeal appeals.

Some suggestion is made that the action below may be beyond jurisdiction, since 9 U.S.C.A. § 12 states that the notice of a motion to vacate must be served within three months after the filing of the award. Whatever the bearing of this upon our action at this juncture, it seems clear that this being essentially a motion for relief against a judgment, as under F.R. 60 (b), 28 U.S.C.,[2] the court has jurisdiction, even though there might conceivably be error in the court's refusal to apply the statutory limitation. While denial of a motion under F.R. 60(b) may lead to an appealable order of the grounds therein taken, see United States v. Wissahickon Tool Works, 2 Cir., 200 F.2d 936, it seems apparent, as stated in 3 Moore's Federal Practice 3278, 1st Ed. 1938, that grant does not. At most the process leads only to a new trial, a step settled to be not reviewable. See Barbarino v. Stanhope S. S. Co., 2 Cir., 150 F.2d 54; F.R. 59, 73(a).

This result discouraging disruptive and delaying appeals seems thus not only compelled on authority, but desirable as aiding effective use of the arbitration process. Appellate interference with district court approaches toward an as yet unrealized final adjudication can be justified only on the ground of probable error which should be speedily corrected. Even in the normal case, the chance of error, as shown by our actions in reversing the lower court, is only about one out of four. See Ann.Rep. Director Adm. Off. of U. S. Courts 1952, Table B 1, p. 112, and this same table in reports for earlier years. This small ratio of probable error is rendered obviously much smaller here where the order requiring the new submission was so far discretionary as to make reversal unlikely, even though we might have ruled otherwise in the first instance. And continuance of the arbitration, turning here essentially

---

1. The New York statute, N.Y.C.P.A. § 1459, which provides, as does the federal Act, 9 U.S.C.A. § 6, that any application to the court shall be made and heard, unless otherwise provided, as are "motions," takes the additional precaution of defining arbitration as a "special proceeding," obviously in the light of the distinction made between "action" and "special proceeding" in N. Y. General Construction Law §§ 11–a, 46–a. The broad definition of action in F.R. 2, and see also F.R. 1, makes such a differentiation unnecessary federalwise.

2. We need not stop to consider whether this is entirely an admiralty procedure to which the civil rules are inapplicable, since the admiralty rule as to vacating judgments is certainly not dissimilar. See, e.g., W. E. Hedger Transp. Corp. v. Ira S. Bushey & Sons, 2 Cir., 155 F.2d 321, 323, certiorari denied 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635. (The time limitation by local rule therein referred to has been eliminated in later rules revisions because of F.R. 6 [c] and 28 U. S.C. § 452.) F.R. 60(b) is one of the rules recommended for adoption in admiralty in a report of a committee of the Maritime Law Association of the United States in its Doc. No. 363, Sept. 1952, p. 3613.

only on the amount of the damage, is likely to render present objections moot and fairly academic. The delay already in excess of eight months to press this interlocutory appeal shows the disruptive possibilities to the administrative process of encouragement to appellants such as petitioners here. Error, if any, is fully correctable upon appeal after final judgment; there is no reason for precipitate appellate interference by mandamus or otherwise, In re Chappell & Co., 1 Cir., 201 F.2d 343; and the new arbitration should now go forward without delay.

Appeal dismissed.

FRANK, Circuit Judge (dissenting).

1. My colleagues say that the district court's order was one "vacating the prior award and ordering a resubmission to arbitration". In fact, the order, after directing vacation of the award, provided "that the rights of the parties to resubmit their differences to arbitrate before other parties is hereby confirmed." That seems to me to end the case, leaving it to the parties to arbitrate anew, if they wish. In other words, I think the judge did not exercise the discretion, conferred on him by the Act, to direct a new arbitration.[1]

2. But let us assume that the order did so direct. Even so, I think that cases like Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989, are not in point. In such a case, suit is begun on a contract, and then one of the parties obtains an order, in that pending suit, that, pursuant to a clause in the contract, there be an arbitration. In such circumstances, as Judge Learned Hand said in Murray Oil Products Co. v. Mitsui & Co., 2 Cir., 146 F.2d 381, the arbitration is merely a mode of trying the case, like a reference to a master, for the judgment, in the still continuing suit, is based on the arbitrator's award instead of on a master's report. Clearly in such a case the order for arbitration is interlocutory.

But I think the situation different when, as here, with no suit on the contract pending, a party begins suit (under the Act) for specific performance of a contract provision agreeing to arbitrate. An order, in such a suit, requiring arbitration seems to me to be final. In re Pahlberg Petition, 2 Cir., 131 F.2d 968, might, on a superficial glance, seem to be contra. But the report, 43 F.Supp. 761, of the district court's opinion in that case, is preceded by the following statement disclosing, 43 F.Supp. at page 762, what was before this court on appeal: "Libel by the Bulk Carriers Corporation against Kasmu Laeva Omanikud (O. Tiedemann) for failure of owners to deliver chartered vessel to libelant in accordance with charter party, wherein Rud Pahlberg, a member of partnership owning the vessel, petitioned for an order directing libelant to proceed to arbitration of the dispute. Petition to compel charterer to proceed to arbitration granted." [2] In other words, Pahlberg was, like Schoenamsgruber, an order issued in the course of a still continuing suit.

The non-reviewability of most orders for new trial does not present a helpful analogy. For, as we have just said in Portman v. American Homes Products Corp., 2 Cir., 201 F.2d 847, such an order is generally not reviewable even on appeal from a subsequent final order. But I gather that my colleagues concede that the order here, if not presently reviewable, will become so after a new arbitration (if any) and judgment thereon.

The cited New York cases are surely not apposite. Aside from the fact that New York appellate procedure is, in many respects, unlike ours, and that the cited cases do not hold that there is no appeal to the intermediate appellate court,[3] the or-

---

1. See 9 U.S.C.A. § 10(e). It should be noted that the discretion is to "direct a rehearing by the arbitrators." The New York statute—Civil Practice Act, § 1462 —gives discretion to "direct a rehearing either before the same arbitrators or before new arbitrators".

2. The caption of the case—see 43 F.Supp. 761,—is "Petition of Pahlberg. Bulk Carriers Corporation v. Kasmu Laeva Omanikud (O. Tiedemann)."

3. Lack of "finality" in those cases merely meant that there was no appeal to the highest court from an appellate court

ders in those cases were, I think, markedly different from the order here. In Atlantic Rayon Corp. v. Goldsmith, 302 N.Y. 842, 100 N.E.2d 40, the Appellate Division had postponed its own decision until it heard from an official referee it appointed to consider whether an arbitrator's award should be vacated or affirmed. In Industrial Union, etc. v. Todd Shipyards Corp., 300 N.Y. 549, 89 N.E.2d 518, the Appellate Division merely sent the matter back with directions that the same arbitrator hear additional evidence. Moreover, the opinion of the New York Court of Appeals in each of those cases was terse, with no reasoning given and no cases cited.

Nor is the order here like an order for a new trial before a jury or a master or a judge, since involved here is the policy behind the Arbitration Act, i. e., one of encouragement of arbitrations. See Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 985; Wilko v. Swan, 2 Cir., 201 F.2d 439.

One basic purpose of seeking an arbitration is to avoid the delay and expense incident to many a law suit. My colleagues' decision will establish a precedent which will seriously affect that aim; it means that if a judge enters an obviously erroneous order that an arbitration award be set aside, the person who won the arbitration must endure the expense and delay entailed by a new arbitration before he can appeal and obtain a reversal of that order.[4]

Perhaps in answer to this argument, my colleagues make the puzzling suggestion that, all else aside, a review now of this order is undesirable because, "Even in the normal case"—presumably an appeal from an order as to the finality of which my col-leagues have no doubts—"the chance of error, as shown by our actions in reversing the lower court, is only about one out of four." That statement implies that, if it should ever eventuate that, say, 95% of final orders were affirmed, all appeals should be abolished. Actually all that, at most, is shown by statistics such as my colleagues cite, is that, in the view of the upper courts, the trial judges have done their work well in a large proportion of the cases. Surely that fact does not justify eliminating appellate review.

3. My colleagues say that "the new arbitration should now go forward without delay." However, since they hold the order interlocutory, the plaintiff need not comply with that suggestion. For, since an interlocutory order is necessarily incapable of being asserted as *res judicata,* the plaintiff is now at liberty to begin a new suit on the old award.[5] In such a new suit, another judge may reject the defendant's contention that that award was defective, and may then enter judgment for plaintiff.

4. Were it not for adverse precedents in this Circuit—precedents with which I disagree but feel bound by[6]—I would suggest that, if this order is interlocutory, we treat the appeal papers as a petition for mandamus. Because of those precedents, the decision here does not preclude plaintiff from now filing such a petition.[7]

5. Because the majority of the court holds that we cannot review the district court's order, I shall not discuss the merits. However, nothing I have said above is to be taken as an indication that, were we to consider the merits, I would necessarily vote to reverse.

---

which had properly heard an appeal from a trial court's order.

4. The frustration of the policy behind the Act will be singularly manifest here, if plaintiff is correct on the merits, for then the statute of limitations barred the vacation of the award.

5. See Republic of China v. American Express Co., 2 Cir., 190 F.2d 334, 339, and cases there cited.

6. See Zamore v. Goldblatt, 2 Cir., 201 F. 2d 738.

7. See Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329; Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949; Bereslavsky v. Caffey, 2 Cir., 161 F.2d 499; Bereslavsky v. Kloeb, 6 Cir., 162 F.2d 862; 5 Moore, Federal Practice (2d ed.) 39.13 (pp. 744 note 7, 746–747); Wolfson, Extraordinary Writs in the Supreme Court, 51 Col.L.Rev. (1951) 977, 992.