19-3859-cv
*EB Safe, LLC, v. Hurley*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of October, two thousand twenty.

PRESENT:   JOHN M. WALKER, JR.,
           PIERRE N. LEVAL,
           JOSEPH F. BIANCO,
                     *Circuit Judges.*

_____

EB SAFE, LLC,

                     *Petitioner-Appellant*,                          19-3859-cv

           v.

MARK P. HURLEY,

                     *Respondent-Appellee*.

_____

For Petitioner-Appellant:          NEIL A. STEINER (Andrew J. Levander,
                                   *on the brief*), Dechert LLP, New York,
                                   NY.

For Respondent-Appellee:           GREGG L. WEINER (C. Thomas Brown,
                                   *on the brief*), Ropes & Gray LLP, New
                                   York, NY.

On appeal from the United States District Court for the Southern District of New York (Nathan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court entered on October 18, 2019 is **AFFIRMED**.

Petitioner-Appellant EB Safe, LLC ("EB Safe") appeals from the district court's September 27, 2019 order confirming an arbitration award. In particular, EB Safe argues that the district court erred in approving the arbitrators' award of expenses and attorneys' fees. We assume the parties' familiarity with the underlying facts and the procedural history of the case, which we reference only as necessary to explain our decision to affirm.

## BACKGROUND

This appeal centers on an arbitration arising from a disagreement over the sale of a company, Fiduciary Network, LLC ("Fiduciary Network" or "Company"). Respondent-Appellee Mark P. Hurley co-founded Fiduciary Network in 2006 and, prior to the sale of the Company, he owned or controlled approximately 19 percent of the Company's equity and served as the Company's Chairman and Chief Executive Officer. EB Safe was the majority equity holder of Fiduciary Network.

On December 12, 2017, EB Safe commenced the arbitration at issue here, claiming that Fiduciary Network's LLC Agreement barred Hurley from participating as a bidder in the sale of the Company. Hurley counter-claimed that the LLC Agreement did not restrict him from participating in the sale process, and sought a declaration defining the authorities and duties of the negotiating committee tasked with supervising the sale process under the LLC Agreement.

Then, on March 30, 2018, EB Safe prompted the Fiduciary Network board of directors to begin an internal investigation into Hurley based on allegations that Hurley had been arrested in

2

November 2017 for domestic violence and that he had disclosed that information to certain executives at Fiduciary Network's portfolio companies. In a letter calling a special board meeting, EB Safe-controlled board members called for Hurley's suspension from the Company. In response, Hurley filed amended counterclaims in the arbitration challenging, *inter alia*, EB Safe's ability to suspend him under the terms of the LLC Agreement.

On May 24, 2018, the arbitrators issued a unanimous award. They concluded that Hurley had prevailed on the primary issues in the arbitration – namely, his right to participate in the Fiduciary Network sale process as a bidder and to have the negotiating committee pursue the highest price reasonably available. As for Hurley's amended counterclaims, he lost: the arbitrators found that the LLC Agreement did not prohibit the board from investigating Hurley and suspending him during the investigation.

The arbitrators then determined that, as the prevailing party, Hurley was entitled to attorneys' fees and expenses pursuant to the LLC Agreement. App'x at 1104-05 ("Section 10.4 of the LLC Agreement provides, in relevant part, that '[u]nless otherwise determined by the arbitrators . . . , the losing party in an arbitration shall pay all the expenses of the parties involved in the arbitration, including the expenses of the arbitrators.'"). The arbitrators acknowledged the parties' submissions on fees, including EB Safe's argument that Hurley's fee request – $4,790,009.56 – was excessive. The arbitrators then subtracted $484,773.18 in fees that they found were not appropriately chargeable to the arbitration, further reduced the fees by another 50 percent, and awarded Hurley $2,152,618.29.

On September 27, 2019, the district court granted EB Safe's petition to confirm those portions of the award approving the suspension and investigation of Hurley; denied Hurley's request that the arbitrators retain jurisdiction; denied EB Safe's petition to vacate the award to the

3

extent it awarded attorneys' fees to Hurley; granted Hurley's cross-motion to confirm the attorneys' fees portion of the award; and denied Hurley's request for pre-judgment interest. On October 18, 2019, the district court entered judgment in favor of Hurley for the full amount of attorneys' fees awarded to him by the arbitrators. This appeal followed.

## DISCUSSION

EB Safe argues that the district court erred in approving the fee award on two grounds: (1) the fee award was in "manifest disregard of the law"; and (2) Hurley procured the attorneys' fee award through fraud via perjury at the arbitration. We find neither of these arguments to be persuasive.

### A.     Standard of Review

"This Court reviews a district court's decision to confirm an arbitration award de novo on questions of law and for clear error on findings of fact." *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019). "[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quotation marks omitted). The Federal Arbitration Act (FAA) creates a "strong presumption in favor of enforcing arbitration awards," and courts have an "extremely limited" role in reviewing such awards. *Wall St. Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 849 (2d Cir. 1994).

### B.     Manifest Disregard

Hurley asserts that the arbitrators' fee award was made in "manifest disregard" of the law. An arbitration award should be vacated on grounds of manifest disregard of the law where (1) "the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators," (2) "the law was in fact improperly applied, leading to an erroneous outcome," and

4

(3) "the arbitrator [knew of the law's] existence, and its applicability to the problem before him." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010). The "manifest disregard of the law" standard is one of "last resort[,] . . . limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). When reviewing an arbitration award for manifest disregard, the reviewing court "must attempt to infer from the record whether the arbitrators appreciated and ignored a clearly governing legal principle." *Bear, Stearns & Co., Inc., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005). "Given the deference afforded arbitration decisions," a petitioner seeking to vacate an award based on manifest disregard must show "more than a mistake of law or a clear error in fact finding." *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002). Instead, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landy Michaels Realty Corp. v. Local 32B–32J Serv. Emps. Int'l*, 954 F.2d 794, 797 (2d Cir. 1992) (quotation marks omitted).

EB Safe argues, and Hurley does not dispute, that Delaware law governed the arbitration and that Delaware law requires the party seeking fees to demonstrate the reasonableness of its fee request. *See Mahani v. EDIX Media Grp., Inc.*, 935 A.2d 242, 245-46 (Del. 2007). EB Safe contends that the arbitrators did not require Hurley to demonstrate the reasonableness of the fee request, and therefore, the fee award was in manifest disregard of the law. Before awarding fees, the arbitrators reviewed the parties' fee submissions, including Hurley's submission and four additional substantive letter briefs exchanged by the parties. Based upon that review, the arbitrators subtracted the $484,773.18 sought by Hurley that they found to be inappropriately

5

charged, and then determined that an award of 50% of Hurley's fee request represented his "recoverable" legal fees and costs that were "reasonable and appropriate." App'x at 1105. Moreover, the total amount awarded to Hurley, $2,152,618.29, was similar to the amount EB Safe itself requested as reasonable attorneys' fees and expenses. Therefore, it is clear that the arbitrators applied the reasonableness standard and provided a colorable justification for the outcome reached regarding the fee award. *See Landy Michaels Realty Corp.*, 954 F.2d at 797. Accordingly, the district court properly rejected EB Safe's manifest-disregard argument.

## C. Fraud

EB Safe also argues that the district court should have vacated the arbitration award because, it claims, Hurley committed perjury during the arbitration. More specifically, EB Safe contends that Hurley committed perjury when he testified about the timing of certain disclosures Hurley made to executives at one of Fiduciary Network's portfolio companies. At the arbitration, Hurley testified that he had disclosed that he had been arrested to executives at a portfolio company *after* his attorney spoke to EB Safe's attorney in February 2018. However, after the arbitration, Hurley submitted a timeline to the Company that suggested Hurley told the executives at the portfolio company about the arrest *before* the communication with EB Safe's attorney.

The FAA provides that vacatur of an arbitration award is appropriate "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). To warrant vacatur, however, the petitioner must establish that: "(1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, petitioner could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration." *Odeon Capital Grp. LLC v. Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017). Where perjury is at issue, we have held

6

that an arbitration award must stand unless it is "abundantly clear" that it was obtained through the perjury. *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 34 (2d Cir. 1951).

EB Safe has failed to meet that standard. Notwithstanding inconsistencies as to whether Hurley's communication with EB Safe's lawyers occurred before or after he told one of Fiduciary Network's portfolio companies, it is far from clear that this resulted from intent to mislead as opposed to uncertainty or confusion. During his testimony, Hurley expressed uncertainty about the timeline of events, stating that he "d[id]n't remember the exact day" and that the conversations were "around the [same] time." App'x at 754. Moreover, the relative timing of those communications had little or no significance in the arbitration. The arbitrators made no reference to which communication came first in deciding on the amended counterclaims. Far from being clear proof of "willful intent to provide false testimony," the inconsistencies could equally have been the "result of confusion, mistake, or faulty memory" based upon this record. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Therefore, the district court properly found that the inconsistencies did not demonstrate perjury.

## CONCLUSION

We have considered EB Safe's remaining arguments and conclude they are without merit. Accordingly, judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7